UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JERRY L. HEDGE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) No. 1:13-cv-01567-JMS-MJD |
| CAROLYN COLVIN, Acting Commissioner of Social Security, | ) ) ) |
| | ) |
| Defendant. | ) |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Jerry Hedge applied for disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") from the Social Security Administration ("SSA") on August 6, 2010, alleging a disability onset date of January 5, 2010. His applications for disability, DIB, and SSI were denied on December 7, 2010, and denied again after reconsideration on February 28, 2011. A video hearing was held on April 19, 2012, in front of Administrative Law Judge Laura Speck Havens (the "ALJ"), who determined that Mr. Hedge was not entitled to receive disability, DIB, or SSI. [Filing No. 12-2 at 32-39.] The Appeals Council denied review, making the ALJ's decision the Commissioner's "final decision" subject to judicial review. Mr. Hedge has filed this civil action pursuant to 42 U.S.C. § 405(g), asking the Court to review his denial of benefits. [Filing No. 1].

### I.
#### BACKGROUND

Mr. Hedge was fifty-two years old as of his onset date. [Filing No. 12-6 at 2.] Previously, he had worked as an exterminator, line worker, packager, sandblast machine

1

operator, and welder. [Filing No. 12-6 at 8.] Mr. Hedge claims he has been disabled since January 5, 2010, because of a variety of physical impairments that will be discussed as necessary below.[1] [Filing No. 12-6 at 7.]

Using the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520, the ALJ issued an opinion on May 3, 2012. [Filing No. 12-2 at 32-39.] The ALJ found as follows:

- At Step One of the analysis, the ALJ found that Mr. Hedge had not engaged in substantial gainful activity[2] after the alleged disability onset date. [Filing No. 12-2 at 34.]

- At Step Two, the ALJ found that Mr. Hedge suffered from the severe impairments of diabetes mellitus, hepatitis C, and emphysema. [Filing No. 12-2 at 34-35.]

- At Step Three, the ALJ found that Mr. Hedge did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. [Filing No. 12-2 at 35.] The ALJ concluded that Mr. Hedge had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b) except that Mr. Hedge is able to sit, stand or walk for six hours out of an eight-hour workday, is precluded from climbing ladders, ropes, and scaffolds, and may only occasionally climb ramps or stairs, or balance, stoop, kneel, crouch or crawl. [Filing No. 12-2 at 35-36.] The ALJ also concluded that Mr. Hedge should avoid concentrated exposure to extreme cold and heat and fumes, odors, dusts, gasses and poor ventilation. [Filing No. 12-2 at 35-36.]

- At Step Four, the ALJ found that Mr. Hedge was able to perform past relevant work as a line worker and as a packager. [Filing No. 12-2 at 37-38.]

- At Step Five, the ALJ found that, although Mr. Hedge was able to perform past relevant work, considering Mr. Hedge's age, education, work experience,

---

[1] Mr. Hedge detailed pertinent facts in his opening brief, and the Commissioner did not dispute those facts. Because those facts implicate sensitive and otherwise confidential medical information concerning Mr. Hedge, the Court will simply incorporate those facts by reference herein. Specific facts will be articulated as needed.

[2] Substantial gainful activity is defined as work activity that is both substantial (i.e. involves significant physical or mental activities) and gainful (i.e. work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a) and § 416.972(a).

2

and RFC, there are other jobs that exist in the national economy that he is also able to perform. Specifically, the ALJ found that Mr. Hedge would be capable of working as a cashier, in retail sales, or as a housekeeper. [Filing No. 12-2 at 37-38.]

Based on these findings, the ALJ concluded that Mr. Hedge was not disabled. [Filing No. 12-2 at 38-39.] Mr. Hedge requested that the Appeals Council review the ALJ's decision, but on June 17, 2013, the Appeals Council denied that request. [Filing No. 12-2 at 5.] That decision is the final decision of the Commissioner for purposes of judicial review, and Mr. Hedge subsequently sought relief from this Court. [Filing No. 1.]

## II.
### STANDARD OF REVIEW

The Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

To evaluate a disability claim, an ALJ must use the following five-step inquiry:

(1) [is] the claimant . . . currently employed, (2) [does] the claimant ha[ve] a severe impairment, (3) [is] the claimant's impairment . . . one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, . . . can [he] perform h[is] past relevant work, and (5) is the claimant . . . capable of performing any work in the national economy[?]

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted). "An affirmative answer leads either to the next step, or, on Steps Three and Five, to a finding that the claimant is disabled. A negative answer at any point, other than Step Three, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating all limitations that arise from medically determinable impairments, even those that are not severe. *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ may not dismiss a line of evidence contrary to the ruling. *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

# III.
## DISCUSSION

Mr. Hedge raises four main arguments on appeal: (1) that the ALJ ignored his testimony, [Filing No. 15 at 24-26]; (2) that the ALJ's credibility analysis is deficient, [Filing No. 15 at 26-30]; (3) that the ALJ ignored substantial evidence favorable to him, [Filing No. 15 at 30-33]; and

4

(4) that the ALJ gave significant weight to Dr. Sae Rhee's opinion, but that the opinion does not support the ALJ's RFC finding, [Filing No. 15 at 33-35].

### A. Mr. Hedge's Testimony

Mr. Hedge argues that the ALJ ignored his testimony regarding how his impairments affect his ability to function, and that if she had accepted his testimony, she would have found him disabled. [Filing No. 15 at 24.] In response, the Commissioner contends that the ALJ's failure to cite Mr. Hedge's testimony is not error, [Filing No. 20 at 4], and that the ALJ reasonably considered Mr. Hedge's claims of debilitating pain and symptoms elsewhere in the record, [Filing No. 20 at 3].

There is no mention of Mr. Hedge's oral testimony in the ALJ's opinion. "An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding. But an ALJ need not mention every piece of evidence so long [as she] builds a logical bridge from the evidence to [her] conclusion." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citations omitted). The ALJ here was selective in her discussion, and such cherry-picking was error. Mr. Hedge has been diagnosed with chronic hepatitis C, [Filing No. 12-7 at 2], depression with anxiety, [Filing No. 12-7 at 166-67], emphysema,[3] [Filing No. 12-7 at 165], and diabetes mellitus, [Filing No. 13-2 at 81], and he testified that all of these ailments interfere with his ability to work and care for himself, [Filing No. 12-2 at 48-57]. Mr. Hedge also testified that he has pain in his feet, [Filing No. 12-2 at 54], takes a water pill that forces him to use the restroom every ten to fifteen minutes, [Filing No. 12-2 at 55-56], that his hepatitis causes fatigue, [Filing

---

[3] Mr. Hedge has been diagnosed with chronic obstructive pulmonary disease ("COPD") specifically, but emphysema is a condition included within COPD. Mayo Clinic, *Diseases and Conditions: COPD*, http://www.mayoclinic.org/diseases-conditions/copd/basics/definition/con-20032017 (last visited July 8, 2014).

5

No. 12-2 at 57], and that he has liver pain, [Filing No. 12-2 at 54]. The ALJ did not discuss Mr. Hedge's testimony and, though there may have been an appropriate reason for the ALJ's apparent rejection of that testimony, a discussion regarding the reasons for that rejection is absent from her opinion. Instead, the ALJ simply conclusorily stated that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."[4] [Filing No. 12-2 at 36.] On remand, the ALJ must address Mr. Hedge's testimony. While the ALJ may find a basis in the record evidence to reject Mr. Hedge's testimony, fair consideration may also result in it being accepted. Either way, she must build a logical bridge from his testimony to her decision.

### B. Adverse Credibility Finding

Mr. Hedge argues next that the ALJ failed to conduct a proper analysis of his credibility by not applying the factors in Social Security Ruling 96-7p, and instead relying on boilerplate language to support her credibility finding. [Filing No. 15 at 26-27.] The Commissioner contends that the ALJ cited several factors to support her credibility finding, and that the ALJ is not required to analyze every factor listed in SSR 96-7p. [Filing No. 20 at 5.]

The ALJ's credibility determination is entitled to special deference. *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004); *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the

---

[4] Though neither party raises this issue, the Court notes that the Seventh Circuit Court of Appeals has criticized ALJs who have made an RFC determination before making a credibility determination. A claimant's RFC hinges partly on the ALJ's assessment of his or her credibility and, consequently, it is improper to determine RFC before assessing a claimant's credibility. *Bjornson v. Astrue*, 671 F.3d 640, 645-46 (7th Cir. 2012). To the extent that this is an issue on remand, the Court reminds the ALJ that she must make a credibility determination before assessing Mr. Hedge's RFC.

opportunity to observe the claimant testifying"). Although the absence of objective evidence cannot, standing alone, discredit the presence of substantive complaints, *Parker v. Astrue*, 597 F.3d 920, 922-23 (7th Cir. 2010), when faced with evidence both supporting and detracting from claimant's allegations, the Seventh Circuit has recognized that "the resolution of competing arguments based on the record is for the ALJ, not the court," *Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002). Consistent with Seventh Circuit authority, the Court will not disturb a credibility finding unless it is "patently wrong in view of the cold record." *Imani ex rel. Hayes v. Heckler*, 797 F.2d 508, 512 (7th Cir. 1986); *see also Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994) ("[Because] the ALJ is in the best position to observe witnesses, [courts] usually do not upset credibility determinations on appeal so long as they find some support in the record and are not patently wrong").

When evaluating the credibility of an individual's statements, the ALJ must consider the entire case record and give specific reasons for the weight given to the individual's statements. SSR 96-7p. Under SSR 96-7p, the ALJ must assess the following minimum factors:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p. "'[D]etermining the credibility of the individual's statements, the adjudicator must consider the entire case record,'" and a credibility determination "'must contain specific reasons for the finding on credibility, supported by the evidence in the case record.'" *Prochaska*, 454 F.3d at 738 (quoting SSR 96-7p). Furthermore, the Seventh Circuit has stated that it "will uphold an ALJ's credibility finding if the ALJ gives specific reasons for that finding, supported by substantial evidence. But the ALJ may not simply ignore evidence." *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009) (citations omitted).

   *1) Lack of Evidentiary Support*

The ALJ found that Mr. Hedge was "less than credible" and is "highly functional." [Filing No. 12-2 at 37.] Mr. Hedge argues that the ALJ provided little to no support substantiating this finding, [Filing No. 15 at 27], and that it consequently is unclear what the ALJ relied on when she made her credibility determination, [Filing No. 15 at 29]. The Commissioner responds by saying that the ALJ addressed Mr. Hedge's activities and treatment records throughout her decision, and need not analyze every factor in SSR 96-7p. The Commissioner adds that "we can 'track the ALJ's reasoning and be assured that the ALJ considered the important evidence.'" [Filing No. 20 at 6 (citing *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995)).]

Contrary to the Commissioner's assertion, the ALJ's sparse analysis prevents the Court from being able to determine whether she considered Mr. Hedge's testimony and also from being able to clearly identify the evidence with which she supported her credibility determination. For example, the Commissioner argues that the ALJ relied on Mr. Hedge's ability to perform activities of daily living and the facts that he maintains a relationship with his girlfriend and is able to maintain focus on completing various tasks. [Filing No. 20 at 6 (citing Filing No. 12-2 at

8

35).] But though the ALJ may have relied on this evidence, there is no language indicating such because she cited it without any discussion regarding Mr. Hedge's credibility. Furthermore, Mr. Hedge's abilities to function socially and concentrate on task completion are abilities that say little about his physical capacity. And as Mr. Hedge notes, an ALJ's credibility analysis may be found deficient if she relies too heavily on a claimant's activities of daily living. [Filing No. 15 at 29.] *See Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013); *Spiva v. Astrue*, 628 F.3d 346, 352 (7th Cir. 2010). The Seventh Circuit Court of Appeals has explained that:

> The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer.

*Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). A finding that Mr. Hedge can perform daily activities "does not necessarily translate into an ability to work full-time." *Roddy*, 705 F.3d at 639.

Aside from the evidence the Commissioner argues the ALJ used to support her credibility determination, the ALJ appears to have cited evidence elsewhere in her opinion that may support her determination. [Filing No. 12-2 at 36-37.] However, she did not state whether or how that evidence supports her finding, thus failing to explicitly connect the evidence to her conclusion that Mr. Hedge is not credible. For example, the ALJ cited Dr. Joseph Gaddy's assessment of Mr. Hedge's residual functional capacity, but did not explain how Dr. Gaddy's assessment supports her conclusion that Mr. Hedge's complaints are not credible. [Filing No. 12-2 at 37.] The ALJ also cited evidence that Mr. Hedge's treating doctor was reluctant to put him on disability before initiating hepatitis C therapy, but she did not explicitly state whether or how this evidence supports her credibility determination. [Filing No. 12-2 at 36.] In sum, the ALJ's opinion does not clearly indicate what she considered in reaching her credibility determination,

9

and she failed to support her finding specifically enough to enable Mr. Hedge and the Court to understand her reasoning. *Craft*, 539 F.3d at 678.

### 2) Credibility Template

Mr. Hedge also argues that the ALJ failed to provide examples demonstrating that he is highly functional, instead relying improperly on a template to support her credibility determination. [Filing No. 15 at 27.] The ALJ made the following adverse credibility finding:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

[Filing No. 12-2 at 36.] This language is very similar to the "meaningless boilerplate" that the Seventh Circuit Court of Appeals has repeatedly criticized. *Bjornson*, 671 F.3d at 644-45. And like in *Bjornson*, the ALJ in Mr. Hedge's case failed to link this conclusory statement to the evidence in the record or tailor it to the facts at hand. *Id.* at 644.

In response, the Commissioner correctly points out that the Seventh Circuit Court of Appeals has affirmed decisions in which ALJs used credibility templates, however those cases involved situations where the ALJ adequately explained his or her conclusion. *See, e.g.*, *Carter v. Astrue*, 413 Fed. Appx. 899, 905-06 (7th Cir. 2011) ("The ALJ dedicated nearly three pages of her opinion to detailing her adverse credibility finding"); *Filus v. Astrue*, 694 F.3d 863, 868-69 (7th Cir. 2012) ("Here, the ALJ did offer reasons grounded in the evidence" for the credibility determination). Unlike the ALJ in those cases, the ALJ here simply wrote conclusory statements contained within the length of a single page, and it is unclear whether she intended to support her determination with the evidence she cited elsewhere in her opinion and whether that evidence is

supportive of her determination. [Filing No. 12-2 at 36-37.] Additionally, the ALJ cites no evidence for her conclusion that Mr. Hedge "remains highly functional." [Filing No. 12-2 at 37.]

### 3) Harmless Error

The Commissioner argues that the ALJ's alleged failure to discuss certain pieces of evidence is harmless error because Mr. Hedge has not identified a lack of record support for the ALJ's findings or evidence proving that he was as limited as claimed in testimony or other reports. [Filing No. 20 at 7.] The harmless error doctrine is "applicable to judicial review of administrative decisions." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). Under harmless error review, the Court can affirm the agency's decision "[i]f it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record." *Id.*, *see also Schomas v. Colvin*, 732 F.3d 702, 707-08 (7th Cir. 2013). In reviewing the ALJ's decision for harmless error, the Court must determine if the ALJ's determination that Mr. Hedge was not credible would remain unchanged had the ALJ properly considered all the record evidence. Because the ALJ did not adequately explain how and why she determined that Mr. Hedge's claims regarding his limitations were not credible, the Court cannot state with great confidence that he was not as limited as he claimed and thus is unable to conclude that the error was harmless.

### C. Substantial Evidence

Next, Mr. Hedge argues that the ALJ ignored substantial evidence favorable to his case. [Filing No. 15 at 30-33.] In response, the Commissioner argues that the ALJ reasonably considered all record evidence and is not required to discuss every piece of evidence. [Filing No. 20 at 7-9.]

While the Commissioner is correct that an ALJ "need not discuss every piece of evidence in the record," she must "confront the evidence that does not support [her] conclusion and explain why it was rejected." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Furthermore, the Court cannot affirm an ALJ's denial of benefits if her decision is not supported by substantial evidence or "an adequate discussion of the issues." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). As discussed below, the ALJ cited evidence to support her finding that Mr. Hedge is not disabled, but ignored substantial evidence favorable to Mr. Hedge.

1) *Hepatitis C*

There is substantial evidence that during periods of active treatment for hepatitis C,[5] Mr. Hedge is fatigued, has constipation followed by diarrhea, has flu-like symptoms and bodily pain, [Filing No. 12-9 at 62; Filing No. 12-9 at 133; Filing No. 13-1 at 178; Filing No. 13-1 at 180-81], sleeps ten to twelve hours a day for the first three days after an injection, [Filing No. 12-9 at 110], and has a history of faring poorly during treatment, [*see, e.g.*, Filing No. 12-9 at 154-55; Filing No. 12-9 at 194]. There is also evidence that Mr. Hedge's treatment was not effective in clearing the hepatitis C virus. [*See, e.g.*, Filing No. 12-9 at 81; Filing No. 13-1 at 167.][6] Though

---

[5] Mr. Hedge's medical records indicate that he received treatment for hepatitis C on at least two occasions, [Filing No. 12-8 at 114; Filing No. 12-9 at 62], and that treatment in Mr. Hedge's case consisted of injections once weekly, for a period that ranged from twenty-four to forty-eight weeks, [Filing No. 12-9 at 110; Filing No. 12-9 at 133; Filing No. 13-1 at 171; Filing No. 13-1 at 180].

[6] The ALJ appears to have confused medical records relating to Mr. Hedge's histoplasmosis – an infection caused by breathing in spores of a fungus – with those relating to his hepatitis C treatment. Specifically, the medical records indicate that Mr. Hedge tested positive for histoplasmosis in April 2010. [Filing No. 12-7 at 30.] After some treatment, Dr. David Miller noted "no signs of active infection . . . Histo Ag neg . . . ." [Filing No. 12-7 at 32.] It is this note from Dr. Miller that the ALJ cited to support her statement that "[a]fter undergoing interferon treatment, the claimant was noted to have no active infection and no symptoms." [Filing No. 12-

the ALJ's opinion that Mr. Hedge is not disabled may ultimately be correct, she ignored substantial evidence that he may be disabled during periods of treatment for hepatitis C. Consequently, the Court cannot find that the ALJ met her duty to consider all relevant medical evidence.

### 2) Diabetes, Edema, and Other Ailments

Mr. Hedge argues that the ALJ also ignored substantial evidence of his edema, diabetes, emphysema and various other ailments. [Filing No. 15 at 32.] In turn, the Commissioner argues that Mr. Hedge cites no medical source statement, conclusion, or opinion that demonstrates that he suffers limitations due to diabetes and edema. [Filing No. 20 at 8-9.] The Commissioner further argues that treatment alone does not prove disability. [Filing No. 20 at 9 (citing *Skinner v. Astrue*, 478 F.3d 836, 845 (7th Cir. 2007)).] Though the Commissioner may be correct, and the ALJ's finding of non-disability may ultimately be appropriate, the ALJ stated nothing in her opinion to explain why she disregarded evidence of Mr. Hedge's diabetes, edema, and other ailments. Like her discussion of Mr. Hedge's hepatitis C, on remand the ALJ must consider all relevant medical evidence and is not allowed to single out certain facts that will support a "finding of non-disability while ignoring evidence that points to a disability finding." *Denton,* 596 F.3d at 425 (citing *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009)).

---

2 at 36.] Interferon is a treatment for hepatitis C, and the medical records that note Mr. Hedge's hepatitis treatment are several pages earlier, [Filing No. 12-7 at 24]. Accordingly, it appears that the ALJ relied upon medical records regarding histoplasmosis, but was discussing interferon treatment which was for hepatitis C. Moreover, Mr. Hedge's records indicate that he received treatment for hepatitis in August 2010, [Filing No. 12-7 at 23-24], which seems to be at odds with the ALJ's finding that Mr. Hedge had no active infection in July 2010. [Filing No. 12-2 at 36.] The Commissioner cites seven separate pages to support the ALJ's finding that Mr. Hedge does not have an active infection, but each page appears to refer to Dr. Miller's note regarding histoplasmosis, and each record cited appears to be from the same date, July 21, 2010. [Filing No. 20 at 8 (citing Filing No. 12-7 at 30; Filing No. 12-7 at 32; Filing No. 12-7 at 53; Filing No. 12-8 at 86; Filing No. 12-8 at 97; Filing No. 12-9 at 130; Filing No. 12-9 at 151).]

13

### D. Dr. Sae Rhee's Opinion

Finally, Mr. Hedge argues that the ALJ gave significant weight to Dr. Rhee's opinion, but that Dr. Rhee did not provide any opinion on Mr. Hedge's functional abilities and his opinion does not support the RFC. [Filing No. 15 at 33-35.] In response, the Commissioner argues that Dr. Rhee's examination, which showed few abnormalities, is consistent with a finding that Plaintiff could perform a restricted range of light work. [Filing No. 20 at 9.]

It appears that the ALJ relied heavily on both the opinion of Dr. Gaddy, the state-agency doctor who assessed Mr. Hedge's RFC, and the opinion of Dr. Rhee. [Filing No. 12-2 at 37.] However, the ALJ did not explain how Dr. Rhee's opinion is consistent with her RFC determination, but only conclusorily stated that the opinion is "well supported by the medical record and by the results of his own examination." [Filing No. 12-2 at 37.] In fact, Dr. Rhee concluded that Mr. Hedge had "loss of appetite, weight loss, generalized weakness in extremities, [and] marked fatigue syndrome in association with probable liver disease due to Hepatitis C." [Filing No. 12-7 at 166-67.] While, as Mr. Hedge argues, the ALJ may not need to undertake a function-by-function analysis of Mr. Hedge's ability to perform work activity, the ALJ still must build a logical bridge from the opinion evidence – including Dr. Rhee's opinion – to her RFC determination. This she did not do. *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014) ("[W]e will examine the ALJ's decision to determine whether it reflects a logical bridge from the evidence to the conclusions sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review").

In sum, the ALJ failed to consider Mr. Hedge's testimony, failed to build a logical bridge from the evidence to her credibility determination, disregarded evidence that contradicted her finding that Mr. Hedge is not disabled, and failed to explain how Dr. Rhee's opinion supported

her RFC determination. While her conclusion that Mr. Hedge is not disabled may ultimately be correct, the case must be remanded to correct these errors.

## IV.
### CONCLUSION

For the reasons stated herein, the ALJ's denial of Mr. Hedge's application for disability, disability insurance benefits, and supplemental security income is **REVERSED** and the case is **REMANDED** for further proceedings consistent with this opinion pursuant to 42 U.S.C. § 405(g) (sentence four). Judgment shall issue accordingly.

**Distribution via ECF only to all counsel of record**